## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JULIA BAKER,

      Plaintiff,

v.                          Case No. 8:24-cv-01251-MSS-TGW

GREYSTAR MANAGEMENT
SERVICES, L.P.,

      Defendant.

_____/

### DEFENDANT'S MOTION TO DISMISS

     Defendant Greystar Management Services, L.P. ("Defendant" or "Greystar"), moves to dismiss Plaintiff Julia Baker ("Plaintiff")'s putative Class Action Complaint (the "Complaint") under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and states:

## I.    INTRODUCTION

     Plaintiff challenges the tenant security deposit notice she received after she moved out of her apartment at the Novel Midtown Tampa apartment complex. Doc. 1 ¶¶ 59–99. Rather than sue the landlord/owner of Novel Midtown Tampa per the statute she proceeds under, Plaintiff targets the wrong entity, attempting to sue the manager in a futile effort to create a

putative class action and attempt to manufacture jurisdiction under the Class

Action Fairness Act ("CAFA"). But Plaintiff's allegations are self-defeating.

Plaintiff's Apartment Lease Contract (the "Lease") – attached to the

Complaint as Exhibit A – clearly shows Defendant Greystar is _not_ the owner:



Doc. 1 ex. A (the Lease), at 1 (emphasis added) (re-filed at Doc. 8, at 1).

This Lease excerpt states two things: (1) the owner of the Novel Midtown

Tampa property is CPUS Midtown, LP ("CPUS"), and (2) notice may be sent to

Greystar, identified as the manager of Novel Midtown Tampa.[1] Plaintiff's

---

[1]   Defendant Greystar is _not_ the actual manager of the property. An affiliate of Greystar,
      specifically GREP Southeast, LLC ("GREP") is the manager and GREP is the entity that
      contracted with the owner CPUS to manage the property. In conferring with Plaintiff's
      counsel, Defendant understands Plaintiff would amend to name GREP instead of
      Greystar. However, Plaintiff disputes Defendant's primary argument: _i.e._, that neither
      Greystar nor GREP would be appropriate defendants in this action, because the liability
      – if any – would be directly solely to the owner of the property and not the manager.

Lease was between "you, the resident(s)" (*i.e.*, Plaintiff Ms. Baker) and "us, the owner" (*i.e.*, CPUS). *Id.*

Florida Statutes Chapter 83 governs relationships between tenants and landlords, and thus, Plaintiff should have brought this action against the owner (not Greystar). But Plaintiff did not. Instead, Plaintiff opted to sue only the entity identified solely as the manager, likely because Novel Midtown Tampa is a single apartment complex, and Plaintiff wishes to try to bring this action for numerous apartment complexes, with different owners and different documents, across the entire state of Florida. Doc. 1 ¶¶ 10, 45, 47, 49.

Plaintiff asserts three claims: (1) Violation of the Florida Residential Landlord and Tenant Act, Fla. Stat. § 83.40 *et seq.* ("FRLTA"); (2) Violation of the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA"); and (3) Breach of Contract. All fail as a matter of law.

First, Plaintiff's FRLTA claim is improperly directed at the putative manager, not the landlord/owner. Second, Plaintiff's FCCPA claim is not directed at a "debt collector" under the FCCPA, especially where Defendant Greystar did not retain any portion of the security deposit at issue. Third, Plaintiff's breach of contract claim fails because Defendant Greystar is not a party to the contract, and even if it were, the claim would be needless duplicative of the FRLTA claim.

Moreover, there is no subject matter jurisdiction here. Even if valid, Plaintiff's claims should be directed against the landlord/owner, not Greystar. And even if Plaintiff were to sue the landlord/owner for every lease at that entire building (Novel Midtown Tampa), it would not satisfy the $5,000,000 amount in controversy requirement under CAFA.

Accordingly, as detailed further below, this Court must dismiss Plaintiff's Complaint.

## II.   STANDARD FOR DETERMINATION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Boyd v. Warden, Holman Correctional Facility*, 856 F.3d 853, 864 (11th Cir. 2017). Although the complaint does not need to contain "detailed factual allegations," it must contain enough facts to show the complainant is entitled to relief on more than a "speculative level." *Twombly*, 550 U.S. at 555; *see* Fed. R. Civ. P. 8(a)(2). Applying these principles requires a two-step approach. *Iqbal*, 556 U.S. at 678–79. First, any threadbare legal conclusions are not entitled to any assumptions of truth, but instead should be eliminated from the complaint. *Id*. Second, any well-pleaded factual allegations should be tested for whether they "plausibly" show an entitlement to relief. *Id*. at 679–80.

77256267;6

As here, where an exhibit attached to a complaint contradicts the allegations of the complaint, the exhibit controls. *Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023) (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016)). Additionally, the Court may consider evidence outside the complaint's four corners, where the Court's subject-matter jurisdiction is at issue. *See, e.g.*, *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

## III.   MEMORANDUM OF LAW

### A.   **Plaintiff's FRLTA Claim Fails Because Plaintiff Did Not Sue the Owner.**

Plaintiff's claim in Count I alleging a violation of the Florida Residential **Landlord**-Tenant Act fails because Plaintiff did <u>not</u> sue her **landlord**. Plaintiff explicitly alleges a breach of Florida Statute Section 83.49(3)(a). *See* Complaint ¶ 60 (explaining the section "requires **landlords** to …" and quoting the provision in detail) (emphasis added); *id.* at ¶ 61 (alleging there is a "penalty for the **landlord's** noncompliance" and quoting additional provisions of the same subsection) (emphasis added). Throughout her Complaint, Plaintiff alleges obligations for a **landlord**. *See, e.g.*, *id.* at ¶¶ 21, 23–25, 60–63.

But Plaintiff then ignores the clear statutory language, her Lease, and her own allegations, to sue the putative[2] manager, Defendant Greystar. The

---

[2]   Again, Greystar is not the actual manager. In disclosing where Plaintiff could send notices, Greystar was incorrectly identified as the manager in Plaintiff's Lease with CPUS. The dispositive issue here is that even if Plaintiff were to amend to name the

security deposit notice provision requires the **landlord** to issue the notice, and imposes the penalties for failure on the **landlord**. Fla. Stat. § 83.49(3)(a). Likewise, Florida Statute § 83.55, titled "Right of Action for Damages," states that "[i]f **either the landlord or the tenant** [emphasis added] fails to comply with the requirements of the rental agreement or this part, the aggrieved party may recover the damages caused by the noncompliance."

Courts regularly dismiss complaints for failing to name the correct party. "As the party asserting [a] claim, [the plaintiff] is required to name the proper parties to the action." *Landings Yacht, Gold & Tennis Club, Inc. v. Swiss Re Corp. Sols. Am. Ins. Corp.*, No. 2:22-cv-00459-SPC-NPM, 2022 WL 17092732, at *2 (M.D. Fla. Nov. 21, 2022) (citing *Eller v. Ben Tzer Yul*, No. 4:06-cv-00028, 2006 WL 3734162, at *2 (N.D. Ga. Dec. 14, 2006)). As the *Landings Yacht* decision explains, even where there might be a "confusing web of entities" (which is hardly the case here) the burden to determine the correct party is on the plaintiff, "not the court nor the parties [the plaintiff] sues." *Id.*

Dismissal is particularly appropriate here, where Plaintiff's Lease, which Plaintiff attaches to her own complaint, clearly identifies the actual owner, and any ownership records are freely available on the Florida Secretary of State, Division of Corporation's website (https://dos.fl.gov/sunbiz/). *See ACG*

---

actual manager, dismissal would still be required because the liability – if any – would fall on the landlord, and not the manager.

6

*S. Ins. Agency, LLC v. Safeco Ins. Co.*, No. 8:19-cv-00528-T-36AAS, 2019 WL 8273657, at \*4, 6 (M.D. Fla. Dec. 16, 2019) (stating "District courts within this Circuit have taken judicial notice of online corporate records at the motion to dismiss stage" and using same dismiss the case against the improperly named party).

The Seventh Circuit's decision in *Springman v. AIG Marketing, Inc.*, is instructive, although the context involved the relation-back of a complaint under Rule 15. 523 F.3d 685 (7th Cir. 2008). In *Springman*, the court expressed concern over a plaintiff that knowingly and intentionally sued the incorrect defendant for years. *Id.* at 690. The specifics of the case were relatively tangled, and ultimately hinged on interpretations of the Class Action Fairness Act and a state court's decision to allow a plaintiff to amend a complaint after deliberately suing the incorrect defendant. *Id.* The Seventh Circuit took a strong stance against this gamesmanship, explaining "[t]he plaintiff's delay in seeking leave to amend was gross, unjustified, and not even explained; the maintenance for years of a suit against a party known by the plaintiff to be the wrong one to sue was an abuse of legal process . . . ." *Id.*

Plaintiffs that intentionally sue incorrect parties do nothing other than waste the time, energy, and resources of the judicial system (and the public by proxy) and the parties they sue. *See generally Wright v. CompGeeks.com*, 429 F. App'x 693, 697 (10th Cir. 2011) (describing a district court's description of a

7

plaintiff knowingly suing a wrong defendant as "unconscionable," before remanding so the plaintiff could address the district court's awarded sanctions).

Presumably, Plaintiff intentionally named the wrong party hoping to artificially increase the size of her desired class action. *Cf.* Doc. 1 ¶¶ 7–9 (trying to expand her landlord-tenant claim beyond her actual landlord). But Plaintiff's allegations cannot circumvent Plaintiff's obligation to actually sue the correct party. *Landings Yacht*, 2022 WL 17092732, at *2; *see also Springman*, 523 F.3d at 689 ("Maybe the plaintiff had thought that because AIGC and AIGM are affiliated corporations it didn't matter which one he sued – that they could be treated as a unit."). Again, the statutory language and Plaintiff's Lease speaks for themselves. And Plaintiff's Lease – attached as an exhibit to her Complaint – controls over Plaintiff's contradictory allegations of ownership. *Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023) (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016)).

Plaintiff is unable to offer any compelling justification for ignoring the plain language of the Lease. Accordingly, this Court should dismiss Plaintiff's FRLTA claim in Count I because it is improperly directed at a putative manager, instead of the actual landlord.

**B.      Ms. Baker's Florida Consumer Collection Practices Act Claim Fails Because Greystar was a Fiduciary for the Landlord.**

Plaintiff's claim in Count II alleging a violation of the Florida Consumer Collection Practices Act ("FCCPA") also fails because Greystar was never the landlord (as explained above) and also because Greystar never retained any security deposits. *Infra* Section III.D.

Greystar is not a "debt collector" under the FCCPA. *Cf.* Complaint, ¶¶ 76-77 (providing only the definition of "debt collector" and not the exceptions, for purposes of alleging legal conclusion that Defendant acts as a debt collector). The FCCPA broadly follows the federal Fair Debt Collection Practices Act, including by mirroring its definitions. Under both Acts, the term "debt collector" excludes any party allegedly collecting a debt "to the extent that such activity is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement . . . ." Fla. Stat. § 559.55(7)(f); *see Lusco v. University Realty of Tampa*, No. 8:13-cv-420, 2014 WL 1159234 (M.D. Fla. Mar. 21, 2014) (finding property manager was a fiduciary and entering summary judgment dismissing FDCPA claims); *Reynolds v. Gables Res. Servs.*, 428 F. Supp. 2d 1260, 1264 (M.D. Fla. 2009) (holding an apartment manager was a fiduciary, and thus not a "debt collector"); *see also Raburn v. Cmty. Mgmt., L.L.C.*, 761 Fed. Appx. 263, 267 (5th Cir. 2019) ("As the district court noted, this holding aligns with one sister court and numerous district courts that have held that

property management companies are not debt collectors because of their fiduciary obligation."); *Ali v. LH All. Inc.*, No. 19-CV-61387, 2019 WL 3997124, at *4 (S.D. Fla. Aug. 23, 2019) ("First, creditors or assignees are not considered debt collectors under the FDCPA, so long as the debt was not in default at the time it was assigned."). Although Plaintiff incorrectly alleges Defendant is the owner (an allegation overridden by the Lease), her Complaint separately alleges, as a property manager, Defendant engages in ordinary property management services that would make it a fiduciary. *See* Doc. 1 ¶ 10.

Plaintiff contends Defendant is *not* a debt collector when it prospectively seeks to collect rent that is not yet past due, but it *is* a debt collector when it seeks past-due amounts above a security deposit. *See* Complaint, ¶ 75 (limiting "debt" to amounts "over and above a security deposit"). Plaintiff further attempts to rely on the Florida small-claims case, *Jonquinta Edwards v. New Three Seasons, Ltd. See* Complaint, ¶ 85. For the Court's convenience, a copy of that small-claims opinion is included as **Exhibit B**.[3] Plaintiff's contentions fail to state a claim here.

First, with respect to Plaintiff's "prospective" versus "past-due" argument, the fiduciary exception to debt collector makes no such distinction – the point is simply that Defendant is *not* a debt collector. Second, the small-

---

[3]   As noted below, Defendant is including a declaration for the Court's subject-matter jurisdiction consideration as **Exhibit A**.

claims case is distinguishable because the court never considered the fiduciary exception (nor does it appear the parties even briefed the issue). Moreover, outside of this single small claims court opinion Plaintiff relies upon, Defendant has been unable to find any case law attempting to tie Section 559.729(9) of the FCCPA to the security deposit notice provision of Section 83.49(3). The *Jonquinta* opinion also failed to address the rulings from this Court, and others, explaining the FCCPA is concerned with debt **collection** activities, and foreclosures or security enforcement activities are **not** collection activities. *Trent v. Mtg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1360–61 (M.D. Fla. 2007) (holding that the FCCPA "is not meant to preclude a creditor or someone otherwise holding a secured interest from invoking legal process to foreclose"). Plaintiff is essentially trying to say that allegedly **retaining** a security deposit the purported debt collector holds is the same thing as **collecting** a debt, but that is not the case. *Id.* And again, Plaintiff's own complaint admits that security deposits themselves are not debts. Doc. 1 ¶ 75.

Accordingly, this Court should dismiss Plaintiff's FCCPA claim in Count II.

### C.    Plaintiff's Breach of Contract Claim is Needlessly Duplicative and Directed Solely Against a Non-Party to the Contract.

Plaintiff's claim in Count III alleging breach of contract fails because Greystar is not a party to the contract (*i.e.*, the Lease). Independently, Plaintiff's breach of contract claim – even if directed against a contracting party – would be needlessly duplicative of its FRLTA claim in Count I.

### 1.    Greystar is <u>Not</u> a Party to the Contract.

Plaintiff cannot sue Greystar for breach of contract because Greystar is not a party to the contract. *See* Complaint ¶ 92 (alleging Plaintiff – but <u>not</u> Greystar – entered into the Lease); Doc. 8 at 1 (the Apartment Lease Contract between Plaintiff Julia Baker and Louis Baker on the one hand, and CPUS on the other). The Lease merely identifies Greystar as an entity "authorized to receive notices and demands in the landlord's behalf." *See* Doc. 8 at 1. This disclosure – required by Florida Statute § 83.50 – does <u>not</u> make Greystar a party to the Lease.

The contract language of the Lease is clear: It is between Ms. Baker (referred to as "you, the resident(s)" in the agreement) and CPUS (referred to as "us, the owner" in the Lease). Doc. 8, at 1.

A plaintiff alleging a breach-of-contract action must demonstrate the existence of a breach of that contract **by the defendant**. *See, e.g.*, *Blue Supply Corp. v. Novos Electro Mechanical, Inc.*, 990 So. 2d 1157, 1159 (Fla. 3d DCA

2008) ("[T]he contract attached to the complaint . . . establish that [the defendant] was not a party to the . . . contract. Because of this inconstancy, any claims against [the defendant], individually, predicated on the existence of a contract between [the defendant and plaintiff] must be viewed as properly dismissed."); *Kennedy v. Reed*, 533 So. 2d 1200, 1202 (Fla. 2d DCA 1988) ("[T]he appellants were **not** parties to the contract and are thus **not** bound by its terms.") (emphasis added); *see also Fla. Cmty. Bank, N.A. v. Red Road Res., LLC*, 197 So. 3d 1112, 1115 (Fla. 3d DCA 2016) (holding Florida Statute § 57.105's reciprocity provision, enabling the winning party to recover fees even where the contract provides only one-way fee shifting for the other party, only applies to contract parties). The contract here was plainly between Plaintiff Baker and the owner/landlord CPUS; Greystar was never a party, nor did it sign the contract as a party. Doc. 8, the Complaint Ex. A, at 1, 9. Accordingly, Plaintiff's breach of contract claim fails to state a claim against Defendant Greystar and must be dismissed.

### 2. The Alleged Breach of Contract Improperly Duplicates the Florida Landlord-Tenant Act Claim.

Even if directed against a contracting party, Plaintiff's breach of contract claim in Count III needlessly duplicates Plaintiff's FRLTA claim in Count I. "Duplicative claims are those that stem from identical allegations, that are under identical legal standards, and for which identical relief is available."

*FCC Hotel Tower, LLC v. Drummond*, No. 2:23-cv-00701-SPC-KCD, 2024 WL 1239262, at *1 (M.D. Fla. Mar. 22, 2024) (quoting *Manning v. Carnival Corp.*, No. 12-22258-CIV, 2012 WL 2962997, at *2 (S.D. Fla. Sept. 11, 2012)).[4] "To promote judicial economic, a court 'should dismiss claims that are duplicative of other claims.'" *Id.*

Plaintiff explicitly states her breach of contract claim in Count III is predicated on the FRLTA violations she alleges in Count I. Doc. 1 ¶¶ 94–95.[5] In conferring on this issue, Plaintiff attempted to justify this repetition of her first claim because the statute of limitations for alleged violations of the FRLTA pled in Count I is only four years, whereas the statute of limitations for purported contract breaches pled in Count III is five years. *See* Fla. Stat. § 95.11(2)(b), (3)(e).

Ignoring whether this procedural distinction is sufficient to justify Ms. Baker's efforts, it is irrelevant here. The Novel Midtown Tampa apartment complex opened only three years ago in 2021. *See* Jay Cridlin, *Midtown Tampa's First Luxury Apartments Now Leasing; Here's What's Inside*, TAMPA

---

[4]   This quote, along with the quote in the next sentence, ultimately stems from *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010).

[5]   For these purposes, it is unnecessary to address the substance of Plaintiff's claim beyond the fact she did not even sue her counterparty to the Lease. *Supra* Section III.C.1. But her suggestion that the mere existence of a contract acts to allow a party to sue under *any* statute, thus undoing the entirety of Florida's private-right-of-action jurisprudence is suspect at best. *See Fla. E. Coast Ry. Co. v. CSX Transp., Inc.*, 42 F.3d 1125 (7th Cir. 1994) (explaining the Florida Supreme Court's language about incorporating law as simply meaning that contracts cannot purport to contravene a valid law).

77256267;6

BAY TIMES (Mar. 15, 2021).[6] Likewise, the current owner (CPUS) only took possession of Novel Midtown Tampa in 2022, at which time it registered as a foreign limited partnership, with that filing readily available through the Florida Secretary of State's Department of Corporations website (available at search.sunbiz.org). The Court may judicially notice each of these facts for purposes of this motion to dismiss under Federal Rule of Evidence 201(b). *See Chapman v. Abbott Labs.*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013) (granting motion to dismiss after considering publicly available documents pertinent to the motion to dismiss without converting it into a motion for summary judgment).

Because Novel Midtown Tampa has not existed for four years, much less five, Plaintiff's argument that her breach of contract action supposedly differs from her FRLTA claim is irrelevant. And again, Plaintiff's improper effort to stretch the statute of limitations by bringing a duplicative claim would never work against Greystar, as it was not even a party to the Lease. *Supra* Section III.C.1. Therefore, dismissal is appropriate.

---

6   https://www.tampabay.com/news/business/2021/03/12/midtown-tampas-first-luxury-apartments-now-leasing-heres-whats-inside/

77256267;6

### D.  The Court Lacks Subject Matter Jurisdiction Under The Class Action Fairness Act.

Plaintiff's Complaint fails to satisfy the jurisdictional requirements under the Class Action Fairness Act. The Class Action Fairness Act broadens diversity jurisdiction to not require complete diversity of citizenship, but at the same time, it requires an amount in controversy of $5,000,000 or more. *See* 28 U.S.C. § 1332(d)(2).

Assuming *arguendo* that Ms. Baker could assert a putative class action for all security deposits ever collected by anyone for the Novel Midtown Tampa apartment complex, the amount in controversy would not be satisfied. *See* Declaration of Jessica Malone ¶ 17 (attesting the deposits are extremely far below the required threshold).[7] Presumably, this is why Plaintiff is attempting to manufacture claims against the manager, instead of suing her landlord/owner – the party with whom she actually contracted. But Plaintiff cannot sue the wrong party in an attempt to manufacture a larger putative class. *See, e.g.*, *Landings Yacht, Gold & Tennis Club, Inc. v. Swiss Re Corp. Sols. Am. Ins. Corp.*, No. 2:22-cv-00459-SPC-NPM, 2022 WL 17092732, at *2 (M.D. Fla. Nov. 21, 2022) (citing *Eller v. Ben Tzer Yul*, No. 4:06-cv-00028, 2006 WL 3734162, at *2 (N.D. Ga. Dec. 14, 2006)) ("As the party asserting [a] claim, [the plaintiff] is required to name the proper parties to the action.").

---

[7]  Ms. Malone's declaration is included as an exhibit to this motion to dismiss.

77256267;6

Plaintiff attempted to allege Greystar is in fact the owner of Novel Midtown Tampa, despite a complete lack of evidence in support of that proposition and Plaintiff's own filed lease agreement proving it is not the case. *Compare* Doc. 1 ¶ 9 (alleging Greystar owns Novel Midtown Tampa), *with* Doc. 8, at 1 (showing Greystar does not own the property, but instead, the owner / landlord is CPUS).[8] But the rule about accepting the allegations of a complaint as true for purposes of a motion to dismiss does not require the Court to willfully blind itself. First, the complaint exhibits control over inconsistent allegations. *Turner*, 65 F.4th at 583 n.27 (citing *Hoefling*, 811 F.3d at 1277). Second, particularly where the Court's subject-matter jurisdiction is at issue, the Court is entitled to consider evidence beyond the complaint. *See, e.g.*, *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

To that end, Plaintiff's attempt to manufacture class action beyond Novel Midtown are unpersuasive, and her attempt to use this Court's jurisdiction is improper. The *actual* facts (which the Court can and should consider with respect to subject matter jurisdiction) are:

1. Greystar does <u>not</u> own the property (Novel Midtown Tampa). Declaration ¶ 9.

2. Greystar is <u>not</u> the landlord of the property. *Id.* at ¶ 6.

---

[8]   Moreover, publicly available documents through the Florida Secretary of State, Division of Corporation's website demonstrate no common entities or ownership here. *See Chapman v. Abbott Labs.*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013) (noting courts' ability to judicially notice facts that are not beyond reasonable dispute).

77256267;6

3. Plaintiff's lease demonstrates a non-party, CPUS, is the owner and landlord of the Novel Midtown Tampa property. *See* Doc. 8 at 1.

4. Greystar is <u>not</u> an affiliate of CPUS. Declaration ¶¶ 7–9.

5. Greystar does <u>not</u> have any ownership of the security deposits, which are held solely by the actual owner. *Id.* at ¶¶ 13–14.

6. Novel Midtown Tampa first opened in 2021, and the current landlord took possession of it in 2022. *Id.* at ¶¶ 10–11.

7. Since inception, the security deposits for Novel Midtown Tampa do not come even close to $5,000,000. *Id.* at ¶ 17 (explaining they are below $150,000).

Defendant understands Plaintiff will respond that as the pleader, her allegations should control for purposes of a motion to dismiss. But while it is true that courts generally accept the amount of claimed damages, courts "may ignore the amount of damages claimed by a plaintiff where the underlying cause of action is brought in bad faith." *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 731 (11th Cir. 2014) (quoting *St. Paul Mercury Indem. Co. v. Red Cap Co.*, 303 U.S. 283, 288 (1938)).

In this case, the allegations are improper because Plaintiff sued the putative manager instead of the owner despite having knowledge of the actual owner in the Lease she attaches to her own Complaint. Presumably, Plaintiff hopes that by suing a multi-property manager, instead of suing her actual landlord for a landlord-tenant claim, will allow her to expand her putative class action in a futile effort to manufacture jurisdiction under CAFA. Plaintiff's

18

pleading is improper. *See, e.g.*, Fla. Stat. § 83.55 (emphasis added) (permitting a Landlord-Tenant Act claim "[i]f either **the landlord or tenant** fails to comply with the requirements of the rental agreement or [Act]").

Because subject-matter jurisdiction goes to the sheer ability of the Court to even consider the case, "[f]ederal courts have an obligation to examine *sua sponte* their own jurisdiction over a case, notwithstanding the contentions of the parties." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020) (citing *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)). "And for that same reason, subject-matter jurisdiction can never be forfeited or waived." *Id.* (citing *U.S. v. Cotton*, 535 U.S. 625, 630 (2002)).

Plaintiff, examining the terms of her Lease before ever filing this lawsuit had a choice between the party identified as the "owner" and the party identified as the "manager." Plaintiff chose incorrectly. Plaintiff's incorrect selection of party defendant cannot be used to manufacture an unwarranted amount in controversy here. For lack of subject-matter jurisdiction, Plaintiff's claims in this Court must fail.

## IV.   CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

Pursuant to Local Rule 3.01(g), the parties (through counsel) conferred regarding this motion. As detailed above, Greystar understands Plaintiff would amend to name the actual manager (the affiliate of Greystar), but disputes the grounds for dismissal detailed in this motion.

## V.     CONCLUSION

All three of Plaintiff's claims fail. Plaintiff improperly sued a manager, rather than her landlord, in her landlord-tenant act claim. Plaintiff improperly characterized the manager as a "debt collector" ignoring a clear exception in the definition of this term and the actual holder of the security deposit. Plaintiff needlessly duplicated her first claim with a breach of contract claim, and asserts it against a non-party to the Lease. Moreover, even if Plaintiff were to sue the correct party for all the security deposits at this entire building, it would not satisfy the amount in controversy requirement under CAFA. For all these reasons, Plaintiff's Complaint must be dismissed.

Respectfully submitted,

/s/ *Jason L. Margolin*

**Jason L. Margolin, Esq.**
Lead Counsel
Florida Bar No. 69881
jason.margolin@akerman.com
judy.mcarthur@akerman.com
**Gregg M. Moran, Esq.**
Florida Bar No. 1011060
gregg.moran@akerman.com
ava.hill@akerman.com
AKERMAN LLP
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
(813) 223-7333 / Fax: (813) 223-2837
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July 2024, I filed the foregoing using the Court's CM/ECF, which will send a copy to all counsel of record.

/s/ *Jason L. Margolin*
Counsel for Defendant

77256267;6